Geoffrey SILL, Alan C. Cunningham, Scott E. Gibbs, Kenneth R. Cooper, Steven D. Weiss, Walter T. Champion, Jr., John M. Forcey, Kenneth A. Karpovich, Diane K. Lehnig, Caesar J. Muccari, David S. Oswald, and M. Dean Ross, Plaintiffs,

Richard A. Parkany, Joseph Schneller, John P. Yanak, Ellen Keyser and Paul Kostrow, Intervening Plaintiffs,

v.

The PENNSYLVANIA STATE UNIVERSITY, Its Board of Trustees, G. Albert Shoemaker, Individually and as President of its Board of Trustees, H. Thomas Hallowell, Jr., Individually and as Vice President of its Board of Trustees, and Eric A. Walker, Individually and as its President, Defendants.

Civ. No. 70–325.

United States District Court, M. D. Pennsylvania.

Aug. 3, 1970.

Thomas K. Gilhool, Philadelphia, Pa., for plaintiffs.

McNees, Wallace & Nurick, G. Thomas Miller, Clyde W. McIntyre, Harrisburg, Pa., Delbert McQuaide, William Schwartz, State College, Pa., for defendants.

## OPINION

NEALON, District Judge.

In this action, seventeen students at The Pennsylvania State University (Penn State), who received disciplinary punishment ranging from two years probation to expulsion as a result of a campus disturbance in April, 1970, request this Court to order defendants, Penn State and its Board of Trustees, to restore them to their full status as students. Presently before the Court is a motion for preliminary injunction[1] filed by Geoffrey Sill and Steven D. Weiss, seeking their immediate reinstatement for the purpose of attending the Summer Term at Penn State pending a final decision on the merits. Evidence was received and testimony taken on this motion at a hearing held July 14, 1970. At this time I make the following

### FINDINGS OF FACT

1. On April 15, 1970, several hundred students at Penn State participated in a demonstration at the "Old Main" Building on the Penn State campus, which resulted in personal injuries and property damage. Thereafter, a special three-member Disciplinary Panel[2] was appointed by the University Board of Trustees to hear the charges brought by University officials against forty students for violation of University rules. Several days of hearings were held by the Panel, during which the students charged were afforded a wide range of constitutional rights.

2. Geoffrey Sill, 25, is a graduate student enrolled in the Doctoral Program of the Department of English at Penn State. He has completed his classwork requirements and is preparing to begin research on his Doctoral dissertation topic, having received the informal approval of most of the faculty Committee which will advise him. The Committee Chairman and chief dissertation adviser, Alan Trachtenberg, Ph.D., is now a Professor at Yale University, New Haven, Connecticut.

3. On June 19, 1970, Eric A. Walker, then President of Penn State,[3] notified Sill of his immediate dismissal from the University for disciplinary reasons arising out of Sill's alleged participation in the demonstration at the "Old Main" Building.[4] Sill was then provided an opportunity to submit further materials to the President by June 26, 1970, which he did, but on June 30, 1970, one day after the beginning of the Summer Term, the President notified Sill that the dismissal would stand.

4. At the time of his dismissal, Sill had registered for the Summer Term at Penn State for research credits towards his Doctoral thesis, which he hoped to complete by December, 1970.

5. Penn State operates on the quarterly term system, consisting of four equal semesters of classes. During the

---

1. Companion motions for preliminary injunction filed by plaintiffs Cunningham, Cooper, Champion, Gibbs, Parkany and Keyser were withdrawn without prejudice.

2. Members of the Panel were Hon. Robert E. Woodside, former Judge of the Pennsylvania Superior Court, Chairman; Hon. Genevieve Blatt, former Pennsylvania Secretary of Internal Affairs; and William T. Coleman, Esq., a prominent Philadelphia lawyer. Judge Woodside and Miss Blatt submitted the majority recommendations to President Walker, while Mr. Coleman filed a dissenting report.

3. President Walker had previously announced his retirement effective June 30,

1970, and has since been succeeded as President by Dr. John W. Oswald.

4. The majority of the Panel concluded that Sill had ordered an Administrative official to leave the building and, when the official demurred, pushed him on the back toward the bottom of a flight of stairs. In addition, Sill was found to have stated to another Administrative official, "Man this is our building, we are taking it over, you better leave or we will throw you out." While agreeing that the latter statement was made by Sill, the minority member of the Panel found no evidence to support the pushing charge and recommended that any penalty against him not be in excess of a severe reprimand in a letter of warning.

Fall, Winter and Spring Terms, covering the months from October to June, 21,000 undergraduate students and 4000 graduate students attend Penn State. During the Summer Term, there are approximately 6000 undergraduate students and a small, but undetermined, number of graduate students.

6. At the time of his dismissal, Sill was the recipient of the prestigious University Fellowship for the Fall, 1970, Term, which carries with it a stipend of $2500.00 plus tuition.

7. In accordance with the University's stipulation, the Fellowship granted to Sill will not be awarded to any other student during the pendency of the action in this Court.

8. Sill's lack of enrollment in the Summer Term at Penn State will not impair his access to the University library, including the availability of the Inter-Library Loan Facility.

9. Sill's lack of enrollment in the Summer Term at Penn State will not diminish his opportunities to secure advice and counseling for his Doctoral thesis, particularly from Dr. Alan Trachtenberg, Chairman of Sill's thesis Committee, whose counsel is especially important in the early stages of the development of his dissertation.

10. Sill's lack of enrollment in the Summer Term at Penn State will not affect his ability to perform his thesis research since it can be performed at almost any well-equipped library and can be submitted to the Department as late as five to seven years after Committee approval of the topic.

11. Sill's lack of enrollment in the Summer Term at Penn State will not alter his deferred Selective Service status as II-S, since the University has agreed not to report the disciplinary action taken against Sill to his Selective Service Board during the pendency of the action in this Court.

12. Steven D. Weiss, 23, is a graduate student enrolled in the Doctoral Program of the Bio-Physics Department at Penn State. He is engaged in research on plant genetics and anticipates receiving his Masters Degree in 1971.

13. On June 19, 1970, Eric A. Walker, President of Penn State, notified Weiss of his immediate dismissal from the University for disciplinary reasons arising out of Weiss' alleged participation in the demonstration at the "Old Main" Building.[5] Weiss was then provided an opportunity to submit further materials to the President by June 26, 1970, which he did, but on June 30, 1970, one day after the beginning of the Summer Term, the President notified Weiss that the dismissal would stand.

14. At the time of his dismissal, Weiss had enrolled in the Summer Term at Penn State for research credits. Weiss is at that stage in his education where he is about to "take hold" as an intellectual researcher with minimum future supervision.

15. At the time of his dismissal, Weiss had expected to be appointed as a graduate assistant for the Fall Term beginning on or about October 1, 1970.

16. In accordance with the University's stipulation, the graduate assistantship Weiss expected to receive for the Fall Term will be held in abeyance pending the outcome of the trial of this action on the merits.

17. The culture developed by Weiss in the course of his research will be maintained by the Bio-Physics Department during the pendency of this action.

18. Weiss' lack of enrollment in the Summer Term at Penn State will not af-

---

5. The majority of the Panel found that Weiss "participated in the mass disruptive demonstration in Old Main" and also refused to leave the building when ordered to do so. He was also found to have urged the crowd over an S.D.S. amplification system to "go into one office, break one window, take one file cabinet and burn it, if they refuse to negotiate with us." The minority member of the Panel felt that the evidence did not support any of the charges made against Weiss, except for the statement made over the amplication system. He recommended that Weiss be sent a letter of warning.

fect his Selective Service status, which is presently I-A, since the University has agreed not to report the disciplinary action taken against Weiss to his Selective Service Board. Weiss previously held a II-A occupational deferment, but was reclassified I-A for reasons not relevant to this lawsuit. His Selective Service Lottery Number is #355 which, barring extraordinary circumstances, would not make him vulnerable to a draft call.

## DISCUSSION

■ Generally, applications for preliminary injunctions are addressed to the sound discretion of the Court and are not issued unless the applicant fulfills his burden of proof. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569 (3d Cir. 1959). It is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it. Warner Bros. Pictures v. Gittone, 110 F.2d 292 (3d Cir. 1940). Necessary factors to be established by the moving party are: (1) a clear showing that irreparable injury would possibly result pendente lite if relief is not granted, and (2) a reasonable probability of eventual success in the litigation. Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319 (3d Cir. 1967); Ikirt v. Lee National Corp., 358 F.2d 726 (3d Cir. 1966); Industrial Electronics Corp. v. Cline, 330 F.2d 480 (3d Cir. 1964). An additional factor for consideration is the injury or inconvenience which may result to the public if the injunction is issued. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

As is evident from the Findings of Fact, all of the original points of irreparable injury alleged by Sill and Weiss have been countered and neutralized by numerous defense stipulations. These allegations of harm have included possible adverse reclassifications by the Selective Service System, loss of a prestigious Fellowship and a graduate assistantship, loss of an important research culture, loss of the use of the laboratory and library facilities, and being deprived of the formal assistance of their Professors. Penn State has agreed to maintain the status quo in each instance except one, viz., the return of Sill and Weiss to official student standing. In light of the numerous concessions by defendants pending a final adjudication on the merits, the absence of ·officially recognized student status hardly constitutes irreparable harm.

■ With respect to Sill, the testimony of Dr. Henry W. Sams, Professor of English and Chairman of the Department at Penn State, is important. Dr. Sams' testimony was supplemented after the hearing by certain interrogatories on Sill's particular ability to perform his Doctoral thesis research pending a decision in this lawsuit. Dr. Sams, who was originally called on behalf of Sill, stated that Sill could technically proceed with his graduate study quite profitably, while citing only his emotional state as being inimical to productive research. His testimony further supports the finding that Sill's lack of enrollment in the Summer Term of the University will not affect his use of the University's library facilities or the advice and counseling he needs on his Doctoral thesis. Dr. Sams agreed that Sill's work could " * * * be done almost anywhere and he works pretty much on his own." This testimony coupled with the University's Selective Service and Fellowship stance convince me that Sill will suffer no irreparable injury under the present circumstances.

The same is true of Steven Weiss. His graduate assistantship, virtually assured him for the Fall Term in October, will remain available pending a decision in this action. Moreover, the culture he was developing at the time of his dismissal will not be lost in view of the agreement by the University to maintain it throughout the Summer Term. Furthermore, Weiss' Selective Service status, which caused him minimal danger of being drafted regardless of the University's disciplinary action, will not be jeopardized by any action of Penn State while the merits of this action are being

decided. All in all, I am satisfied that Weiss has not established that he will suffer irreparable injury from his dismissal if preliminary injunctive relief is not granted.

I decline to hold, as suggested by plaintiffs, that the mere interruption of a student's education constitutes irreparable injury ipso facto.[6] Education is, of course, a valuable asset to an individual. See Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954); McLaurin v. Oklahoma State Regents, 339 U.S. 637, 641, 70 S. Ct. 851, 94 L.Ed. 1149 (1950). Since it is individualized, however, it is in that individualized context that the question of irreparable harm must be examined. As amply demonstrated above, the harm to Sill and Weiss is not disabling or irreparable.

With reference to the reasonable likelihood of success on the merits, plaintiffs' arguments are three-fold: (1) the regulations are vague and overbroad; (2) the convening of a Special Disciplinary Panel violated procedural due process, and (3) substantial evidence does not support their dismissal.

While these contentions warrant serious consideration, they are not so strong and certain as to warrant interlocutory relief absent a clear showing of irreparable injury. See Kontes Glass Co. v. Lab Glass, Inc., supra; Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1056 (1965).

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter.

2. Geoffrey Sill and Steven D. Weiss have not established that they will suffer irreparable injury pendente lite if injunctive relief is not granted them.

3. Geoffrey Sill and Steven D. Weiss have not established that there is a rea-

sonable probability of eventual success in this litigation.

4. Geoffrey Sill and Steven D. Weiss are not entitled to a preliminary injunction and their application for same is denied.

### ORDER

Now, August 3, 1970, in accordance with the Opinion, this day filed, the motion of Geoffrey Sill and Steven D. Weiss for a preliminary injunction be and the same is hereby denied.

---

6. It is noted in passing that this is not a situation where a student's education was interrupted in mid-semester, after he had devoted considerable classroom time and study to his subjects. The interruption here was subsequent to registration for the Summer Term, but prior to the actual commencement of formal research and study by the students involved.